**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**


| | | |
|---|---|---|
| **TROY BINION,** | ) | |
| | ) | |
| | ) | |
| *Petitioner*, | ) | |
| v. | ) | **No. 06 C 4333** |
| | ) | |
| **TERRY MCCANN,** | ) | **Honorable David H. Coar** |
| **Warden, Stateville Correctional Center,** | ) | |
| | ) | |
| | ) | |
| *Respondent.* | ) | |


## MEMORANDUM OPINION AND ORDER

Before this Court is Petitioner Troy Binion's ("Petitioner") petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DENIED.


## BACKGROUND

After a 2001 jury trial in the Circuit Court of Cook County, Illinois, Petitioner was convicted under an accountability theory of one count of first degree murder and one count of attempted murder.

At trial, the court admitted testimony related to a polygraph examination taken by Mario Coleman, a prosecution witness who had inculpated Petitioner during questioning by the police. Coleman initially raised the issue in an unsolicited remark during cross-

examination by counsel for Petitioner. Coleman stated that, after signing a handwritten statement before the Assistant State's Attorney, he underwent a lie detector test, then testified before a grand jury. (Feb 15, 2001 Tr. 131:6-12).

Prior to this, Coleman had testified on direct examination that his inculpatory statements were not true, but rather what "the police wanted to hear" and what the detective told him to say. (Feb 15, 2001 Tr. 81:9-19; 83:24-86:2; 100:6-14.) He also testified that he made changes to the handwritten summary of his statements at the instruction of the Assistant State's Attorney. (Feb 15, 2001 Tr. 92:6-9; 97:9-24.)

On re-direct, the following question was posed: "It's your testimony that they made you sign a statement full of things that were not true. And then after they made you sign a statement of what they told you to say, that they took the time out to take you to a lie detector then?" To which Coleman responded, "yeah." (Feb 15, 2001 Tr. 136:11-137:5.)

The police detective who questioned Coleman was called to the stand the following day. He testified that Coleman had voluntarily agreed to undergo a polygraph examination the day before he spoke to the Assistant State's Attorney, signed the handwritten statement, and took the lie detector test. (Feb 16, 2001 Tr. 148:17-149:20.)

The trial judge admitted the testimony for the purpose of establishing the chronology of the police investigation. On both days, he issued instructions directing the jury to consider the evidence for that limited purpose only. (Feb 15, 2001 Tr. 137:17-138:14; Feb 16, 2001 Tr. 146:9-147:10.) In a sidebar, the judge expounded, "[i]t does not make sense that Mr. Coleman would be threatened by the police to make certain statements and then take a lie detector test. . . . Why would the police force someone to

make a statement and then take him to the detector to find out if he was telling the truth or not[?]" (Feb 16, 2001 Tr. 8:18-9:20.) He explained that, because Coleman's claims of coercion were inconsistent with the chronology of the investigation, "the jury has a right to know . . . the course of events," to prevent them from "labor[ing] under a misconception." (*Id.*) The judge later warned the detective not to divulge the results of the polygraph test. (Feb 16, 2001 Tr. 154:23-155:9.)

After the jury returned its verdict, the trial court sentenced Petitioner to a term of 30 years' imprisonment. Petitioner appealed his conviction and sentence to the Illinois Appellate Court, raising three claims: (1) the trial court abused its discretion by admitting the polygraph testimony; (2) petitioner was not proven guilty beyond a reasonable doubt; and (3) the application of Illinois' law of accountability to Petitioner's case was improper. The state appellate court affirmed Petitioner's conviction and sentence on June 20, 2005. *People v. Binion*, 832 N.R.2d 875, 886 (Ill. App. Ct. 2005).

With respect to the polygraph issue, the appellate court held that, under *People v. Jefferson*, 705 N.E.2d 56 (Ill. 1998), the testimony was admissible. It reasoned that "Coleman's trial testimony that his pretrial statement was coerced [and] his subsequent reference to the polygraph examination could have left the jury with the impression that the police first coerced a statement from Coleman and then forced him to undergo a polygraph examination. The possibility of misleading the jury can be a determinative factor in the decision to admit polygraph evidence . . . ." *Binion*, 705 N.E.2d at 885. The appellate court concluded that the trial court did not abuse its discretion, where it issued limiting instructions to the jury, explained how the evidence was and was not to be used,

and where the polygraph evidence was not introduced in mere anticipation of a claim of coercion. *See id.*

On July 11, 2005, Petitioner filed a petition for leave to appeal ("PLA") in the Illinois Supreme Court. His petition contained a single claim: that the appellate court had misconstrued *Jefferson*, and the polygraph testimony was inadmissible. The state supreme court denied Petitioner's PLA on September 29, 2005.

This Court received Petitioner's petition for writ of habeas corpus on August 10, 2006.

## LEGAL STANDARD

Section 2254 empowers federal district courts to hear petitions for a writ of habeas corpus on behalf of a person in state custody on the ground that he or she is in custody in violation of the Constitution, treaties, or laws of the United States. 28 U.S.C. § 2254(a) (1996); *see Wainwright v. Sykes*, 433 U.S. 72, 77 (1977). A federal court may only consider the merits of a writ of habeas corpus after the petitioner has (1) exhausted all available state court remedies; and (2) first presented any federal claim in state court. *See* 28 U.S.C. § 2254(c) (1996); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Jones v. Washington*, 15 F.3d 671, 674 (7th Cir. 1994). Any claim that has not been exhausted in the available state courts will be considered defaulted and therefore procedurally barred.

Federal prisoners may challenge their detention if their conviction or sentence is based on an error that is "jurisdictional, constitutional, or is a fundamental defect which

inherently results in a complete miscarriage of justice." *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004) (internal citation and quotation marks omitted); *see also* 28 U.S.C. § 2255. A federal court will not grant relief on claims that have been decided on the merits by state courts unless the state court's decision "was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1) (1996), or "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2) (1996).

If this court determines that such a defect exists in the judgment or sentence, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). After reviewing the Petitioner's motion, the government's response, and any record of prior court proceedings, the court will also determine whether an evidentiary hearing is required. *See* Rule 8(a) of the Rules Governing Section 2255 Proceedings. However, "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the [court] must dismiss the motion . . . ." Rule 4(b) of the Rules Governing Section 2255 Proceedings; *see also Almonacid v. United States*, 476 F.3d 518 (7th Cir. 2007).


## ANALYSIS

Petitioner claims that his Sixth Amendment right to a fair trial was violated when the trial court admitted testimony regarding Mario Coleman's polygraph examination.

The AEDPA requires that a petitioner exhaust all available remedies in state court before applying for a writ of habeas corpus. *See* 28 U.S.C. § 2254(b)(1). This requirement gives state courts a fair opportunity to consider and correct constitutional violations before they are presented to a federal court. *See United States ex rel. Sullivan v. Fairman*, 731 F.2d 450, 453 (7th Cir. 1984). To fairly present a constitutional claim in state court, a petitioner is required to submit "both the operative facts and the controlling legal principles." *Rodriguez v. Scillia*, 193 F.3d 913, 916 (7th Cir. 1999) (internal citations and quotation marks omitted). In more specific terms, a petitioner raises a federal constitutional claim in state court by (a) relying on federal cases engaging in constitutional analysis; (b) relying on state cases applying constitutional analysis to similar facts; (c) framing the claim in terms calling to mind a specific constitutional right; or (d) alleging a pattern of facts well within the mainstream of constitutional litigation. *See Harding v. Sternes*, 380 F.3d 1034, 1046-47 (7th Cir. 2004).

Throughout the state appellate review process, Petitioner framed the contested admission of polygraph evidence as a violation of Illinois law. In state appellate court, Petitioner argued that the trial judge had abused his discretion in admitting testimony barred by Illinois common law. Before the state supreme court, Petitioner contended that the appellate court misapplied *People v. Jefferson*, which provided limited exceptions to Illinois' general rule rendering polygraph testimony inadmissible. *See* 705 N.E.2d at 61-62.

In his briefs to both the appellate and supreme courts, Petitioner relied exclusively on state cases and state law. None of his cited cases applied constitutional analysis to similar facts. Nor does the pattern of facts in Petitioner's case fall within the mainstream

of constitutional litigation.  To the contrary, the admissibility of polygraph-related

evidence in a state court trial is commonly considered a matter of state law.  *See, e.g.*,

*Scheffer*, 523 U.S. 303, 312 (1998) ("Individual jurisdictions . . . may reasonably reach

differing conclusions as to whether polygraph evidence should be admitted.");  *Escobar*

*v. O'Leary*, 943 F.2d 711, 720 (7th Cir. 1990); *United States ex rel. Davis v. McAdory*,

No. 04 C 595, 2004 WL 2674421. *3 (N.D. Ill. Nov. 3, 2004); *Weston v. Dormire*, 272

F.3d 1109, 1113 (8th Cir. 2001); *Cacoperdo v. Demosthenes*, 37 F.3d 504, 510 (9th Cir.

1994).[1]

In sum, Petitioner failed to present a Sixth Amendment claim, or any federal

constitutional claim, in state court.[2]  To avoid procedural default at this point, a petitioner

must demonstrate cause and prejudice for the failure to raise the claims at issue, or why

default under the circumstances would result in "a fundamental miscarriage of justice."

---

[1] "Violations of state evidentiary rules may not be questioned in federal habeas proceedings unless they render the trial so fundamentally unfair as to constitute a denial of federal constitutional rights." *Escobar*, 943 F.2d at 720-21 (internal citations and quotation marks omitted).  Petitioner has not argued before this or any state court that he received a fundamentally unfair trial or that his constitutional due process rights were violated.  Petitioner has therefore defaulted any implicit due process claims, as well.

Even assuming that Petitioner has adequately raised due process claims in state court so as to prevent their default, Petitioner's trial was not fundamentally unfair. The trial court admitted Coleman's testimony in accordance with the recognized exceptions permitting the admission of polygraph evidence in the state of Illinois.  *See Binion*, 832 N.E.2d at 886.  The results of Coleman's polygraph test were never disclosed, and all related testimony was accompanied by a jury instruction limiting consideration of the evidence to the sole purpose of analyzing the chronology of the police investigation.  Furthermore, as observed by the state appellate court, Petitioner's was not a close case.  *See id.*  Any conceivable error arising from the admission of polygraph evidence was harmless in light of the overwhelming nature of the evidence against him.  As such, the admission of Coleman's polygraph testimony did not render Petitioner's trial fundamentally unfair or violate his due process rights.  *See Escobar*, 943 F.2d at 720-21.

[2] A constitutional claim is forfeited if the state court declined to reach its merits because an independent state law ground was adequate to support the judgment. *See Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). In the instant case, the appellate court based its decision on *People v. Jefferson*, which held that polygraph testimony may be admitted if the testimony is used to rebut a defendant's claim that she had been coerced into making a confession.  *See Binion*, 832 N.E.2d at 885-86 (citing *Jefferson*, 705 N.E.2d at 61-62).  The appellate court found Petitioner's situation comparable to the facts of *Jefferson* when ruling that the polygraph testimony was admissible.  *See id.* Accordingly, had Petitioner presented any federal constitutional claims during state appellate review, they would nevertheless be barred because the court clearly and expressly disposed of the claim on an independent and adequate state law ground.  *See Coleman*, 501 U.S. at 733-35.

*Steward v. Gilmore*, 80 F.3d 1205, 1211 (7th Cir. 1996) (citing *Wainwright v. Sykes*, 433

U.S. 72, 87 (1977)); *see also Coleman*, 501 U.S. at 750.  Petitioner has made no attempt

to demonstrate either of these scenarios.  Consequently, his Sixth Amendment claim is

procedurally defaulted.


## CONCLUSION


     For the foregoing reasons, Watson's petition for writ of habeas corpus pursuant to 28

U.S.C. § 2254 is DENIED.


                              Enter:

                              /s/ David H. Coar


                              _____
                              David H. Coar
                              United States District Judge

Dated: **March 10, 2010**